UNITED STATES v. BROWN.

(District Court, W. D. Washington, N. D. April 21, 1915.)

No. 2988.

1. EVIDENCE ☞10—JUDICIAL NOTICE—FACTS OF COMMON KNOWLEDGE.
   The court will take judicial notice of the fact that opium is not grown or produced in the United States.
   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 9–14; Dec. Dig. ☞10.]

2. COMMERCE ☞3—FOREIGN COMMERCE—REGULATION—STATUTES—VALIDITY.
   Congress may prohibit the importation of opium and regulate its relation to interstate commerce, as is done by Act Dec. 17, 1914, providing for the registration with collectors of internal revenue of dealers in opium, imposing a tax on dealers, and making it unlawful for any person

who has not registered and paid the tax to have in his possession any opium or derivative thereof, and providing that such possession shall be presumptive evidence of a violation of the act.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 3; Dec. Dig. ☜3.]

Kenneth Brown was indicted for crime. Demurrer to indictment overruled.

Clay Allen, U. S. Dist. Atty., and Winter S. Martin, Asst. Dist. Atty., both of Seattle, Wash., for the United States.

Fred W. Dorr, of Seattle, Wash., for defendant.

NETERER, District Judge. It is charged by the indictment that the defendant at the time therein stated—

"did willfully, knowingly, unlawfully, and feloniously have in his possession and under his control a certain compound, manufacture, derivative, and preparation of opium, to wit, about three drams of yen shee, a more particular description of the quantity and quality of said opium derivative and preparation herein referred to as yen shee being to the grand jurors unknown; he the said Kenneth Brown, alias Kenneth Cummings, not having theretofore registered with the collector of internal revenue of the United States in and for the collection district of Washington, all as required under the provisions of the Act of Congress of December 17, 1914, and not having theretofore paid the special tax provided for by said mentioned act, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

A demurrer is filed on the ground that the indictment does not state facts sufficient to constitute an offense under any valid or constitutional law of the United States.

It is contended that the support of the indictment, if any, must come from section 8 of the act referred to, and that this section is unconstitutional, in that it is an attempt on the part of Congress to encroach upon the police power of the several states; that the only right Congress has to control the sale of a commodity, within the provisions of the Constitution, is (a) to regulate commerce; (b) the right of taxation. And neither of these rights is invoked by section 8. Counsel quotes excerpts from the opinions of several of the justices in the License Cases, 5 How. 504, 12 L. Ed. 256, Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205, Leisey v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128, and Austin v. Tenn., 179 U. S. 343, 21 Sup. Ct. 132, 45 L. Ed. 224.

In the License Cases a statute of Massachusetts regulating the sale of foreign liquors within the state was held unconstitutional. In Mugler v. Kansas, a prohibition statute, so called, was held unconstitutional. In Leisey v. Hardin, an "original package" case, the court held that unbroken and unopened packages brought from another state could not be prohibited, as violative of interstate commerce. In Austin v. Tenn., a statute prohibiting the sale of cigarettes within the state was sustained.

No fault can be found with these cases; nor do I think that they throw much, if any, light upon the issue here. The purpose of the drug act in issue is expressed in its title:

"An act to provide for the registration of, with collectors of internal revenue, and to impose a special tax upon, all persons who produce, import, manufacture, compound, deal in, dispense, sell, distribute, or give away opium or coca leaves, their salts, derivatives, or preparations, and for other purposes."

[1] I think we may assume, and that the court will take judicial notice of the fact, that no opium is grown or produced in this country, and that the purpose of the act is to prohibit the importation of opium. The laws with relation to such importations have become more stringent with each succeeding enactment.

[2] Section 1 of the act in question provides, among other things:

"That on and after the first day of March, 1915, every person who produces, imports, manufactures, compounds, deals in, dispenses, sells, distributes, or gives away any opium or coca leaves or any compound, manufacture, salt, derivative or preparation thereof, shall register with the collector of internal revenue of the district his name or style, place of business. * * *"

And it further provides:

"At the time of such registry, and on or before the 1st day of July annually thereafter, every person who produces, imports, manufactures, compounds, deals in, dispenses, sells, distributes, or gives away any of the aforesaid drugs shall pay to the said collector a special tax at the rate of $1.00 per annum."

Section 2 provides a lawful and legal method of acquisition by any person entitled to have possession of these drugs.

Section 8 provides:

"That it shall be unlawful for any person not registered under the provisions of this act, and who has not paid the special tax provided for by this act, to have in his possession or under his control, any of the aforesaid drugs, and such possession or control shall be presumptive evidence of the violation of this section and also of the violation of the provisions of section 1 of this act * * *"

—the purpose of Congress being to prohibit the importation, manufacture, or sale of the drugs described; and by this act the drug became an "outlaw" in the country, its presence Congress has the right to trace, and has the power to punish any person in whose possession this "outlawed" article may be found. The possession of such drug or control thereof is made presumptive evidence of the unlawful importation, manufacture, etc., as well as an obligation to pay the special tax provided by the act, and a failure to register and pay the tax as provided in section 1 would be a fraud upon the United States, in that it deprived the government of the revenues provided by the act.

In United States v. Stowell, 133 U. S. 1, 10 Sup. Ct. 244, 33 L. Ed. 555, the court says:

"By the now settled doctrine of this court (notwithstanding the opposing dictum of Mr. Justice McLean, in United States v. 84 Boxes of Sugar, 7 Pet. [32 U. S.] 453, 462, 463 [8 L. Ed. 745]) statutes to prevent frauds upon the revenue are considered as enacted for the public good and to suppress a public wrong, and therefore, although they impose penalties or forfeitures, not to be construed, like penal laws generally, strictly in favor of the defendant; but they are to be fairly and reasonably construed, so as to carry out the intention of the Legislature."

Congress, having the power to exclude the drug entirely from the United States, and the right to regulate its relation to interstate commerce, and to levy a tax, must be held to have the right to make it unlawful for any person who has not complied with the provisions of the act by registration or paying a tax, to have in his possession this "outlawed" article. The act must be construed as a whole, and force given to every part when this can be done.

Taking the act as a whole, I think the demurrer should be overruled, and it is so ordered.