## UNITED STATES v. CARNEY.

(District Court, N. D. Iowa, C. D.    December 7, 1915.)

### No. 1158.

1. CRIMINAL LAW ☞13—INDICTMENT AND INFORMATION ☞109—DESCRIPTION OF OFFENSE.

   Statutes creating and defining crimes cannot be extended by implication or intendment, and an indictment under such a statute must allege directly and with certainty every element essential to bring the offense within its terms.

   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 13, 14; Dec. Dig. ☞13; Indictment and Information, Cent. Dig. §§ 286–288; Dec. Dig. ☞109.]

2. INDICTMENT AND INFORMATION ☞111—DESCRIPTION OF OFFENSE—STATUTE CONTAINING EXCEPTIONS.

   Where a statute defining an offense contains an exception in the clause creating the offense, which is so incorporated with the language defining it that the offense cannot be accurately and clearly described, if the exception is omitted, the indictment must allege enough to show that the accused is not within the exception; but, if the language creating the offense is so completely separable from the exception that the essential ingredients of the offense may be accurately and clearly defined without any reference to the exception, it need not be negatived therein, but it is a matter of defense.

   [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 295–298; Dec. Dig. ☞111.]

3. POISONS ☞9—ANTI-NARCOTIC LAW—INDICTMENT FOR VIOLATION.

   An indictment under Harrison Anti-Narcotic Act Dec. 17, 1914, c. 1, § 8, 38 Stat. 789, charging that defendant not having registered and paid the special tax required by section 1 of the act, had in his possession a quantity of morphine, is insufficient to charge an offense where it is not alleged that he was engaged in a business which required him to register and pay such special tax.

   [Ed. Note.—For other cases, see Poisons, Cent. Dig. § 6; Dec. Dig. ☞9.]

4. INDICTMENT AND INFORMATION ☞111—NEGATIVING EXCEPTIONS.

   Exemptions from liability for offenses created by acts of Congress are matters of defense; but matters excepted from the granting clause of the act are not within the terms of the act, and such matters must be negatived in the indictment or complaint.

   [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 295–298; Dec. Dig. ☞111.]

Criminal prosecution by the United States against Lester Carney. On demurrer to indictment.    Demurrer sustained.

F. A. O'Connor, U. S. Atty., of New Hampton, Iowa, and Seth Thomas, Asst. U. S. Atty., of Ft. Dodge, Iowa.

Grover M. Neese, of Ft. Dodge, Iowa, for defendant.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

REED, District Judge. The indictment (omitting formal parts) charges:

"That on or about the 15th day of September, 1915, at Mason City, Iowa, within the jurisdiction of this court, the defendant did, knowingly and unlawfully, have in his possession a large quantity of morphine, to wit, about 140 tablets, each containing one-fourth of a grain of morphine, which said morphine was a derivative of opium, without having theretofore registered with the collector of internal revenue for the district of Iowa his name and place of business, and paid to said collector the special tax as provided and required by the act of Congress approved Dec. 17, 1914, relating to the production, importation, manufacture, compounding, sale, dispensing, or giving away of opium or coca leaves, their salts, derivatives, or preparations, contrary to the statute in such case made and provided."

The defendant demurs to the indictment upon the ground alone that it charges no offense. The applicable provisions of the act referred to (38 Stat. 785, chapter 1), are:

Section 1: "That on and after the first day of March, 1915, every person who produces, imports, manufactures, compounds, deals in, dispenses, sells, distributes, or gives away opium or coca leaves or any compound, manufacture, salt, derivative, or preparation thereof, shall register with the collector of internal revenue of the district his name or style, place of business, and place or places where such business is to be carried on," and "at the time of such registry," and "annually thereafter" on or before July 1st, "shall pay to said collector a special tax of $1 per annum. * * * It shall be unlawful for any person required to register under the terms of this act to produce, import, manufacture, compound, deal in, dispense, sell, distribute, or give away any of the aforesaid drugs without having registered and paid the special tax provided for in this section. That the word 'person' as used in this act shall be construed to mean and include a partnership, association, company, or corporation, as well as a natural person; and all provisions of existing law relating to special taxes, so far as applicable, including the provisions of section 3240 of the Revised Statutes of the United States [Comp. St. 1913, § 5963], are hereby extended to the special tax herein imposed. That the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall make all needful rules and regulations for carrying the provisions of this act into effect."

Section 2: "That it shall be unlawful for any person to sell, barter, exchange, or give away any of the aforesaid drugs *except* in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue. Every person who shall accept any such order, and in pursuance thereof shall sell, barter, exchange, or give away any of the aforesaid drugs, shall preserve such order for a period of two years in such a way as to be readily accessible to inspection by any officer, agent, or employé of the Treasury Department duly authorized for that purpose. * * * Nothing contained in this section shall apply—

"(a) To the dispensing or distribution of any of the aforesaid drugs to a patient by a physician, dentist, or veterinary surgeon registered under this act in the course of his professional practice only. * * *

"(b) To the sale, dispensing, or distribution of any of the aforesaid drugs by a dealer to a consumer under and in pursuance of a written prescription issued by a physician, dentist, or veterinary surgeon registered under this act. * * *

"(c) To the sale, exportation, shipment, or delivery of any of the aforesaid drugs by any person within the United States or any territory or the District of Columbia or any of the insular possessions of the United States to any person in any foreign country, regulating their entry in accordance with such

regulations for importation thereof into such foreign country as are prescribed by said country. * * *

"(d) To the sale, barter, exchange, or giving away of any of the aforesaid drugs to any officer of the United States government or of any state, territorial, district, county, or municipal or insular government lawfully engaged in making purchases thereof for the various departments of the Army and Navy," etc.

Section 8: "That it shall be unlawful for any person not registered under the provisions of this act, and who has not paid the special tax provided for by this act, to have in his possession or under his control any of the aforesaid drugs; and such possession or control shall be presumptive evidence of a violation of this section, and also of a violation of the provisions of section one of this act: Provided, that this section shall not apply to any employé of a registered person, or to a nurse under the supervision of a physician, dentist, or veterinary surgeon registered under this act, having such possession or control by virtue of his employment or occupation and not on his own account; or to the possession of any of the aforesaid drugs which has or have been prescribed in good faith by a physician, dentist, or veterinary surgeon registered under this act; or to any United States, state, county, municipal, district, territorial, or insular officer or official who has possession of any said drugs, by reason of his official duties, or to a warehouseman holding possession for a person registered and who has paid the taxes under this act; or to common carriers engaged in transporting such drugs: Provided further, that it shall not be necessary to negative any of the aforesaid exemptions in any complaint, information, indictment, or other writ or proceeding laid or brought under this act; and the burden of proof of any such exemption shall be upon the defendant. * * *"

Section 12: "That nothing contained in this act shall be construed to impair, alter, amend, or repeal any of the provisions of the act of Congress approved * * * February ninth, 1909, entitled 'An act to prohibit the importation and use of opium for other than medicinal purposes,' and any amendment thereof."

The demurrer presents the single question: Does the indictment sufficiently charge the defendant with a violation of any of the provisions of this act? It is not alleged that defendant was or had been engaged in any business that required him to register and pay the special tax as required by the act; nor is anything alleged showing his possession of the tablets to be unlawful, save only the legal conclusion that defendant did "knowingly and unlawfully" have in his possession the 140 tablets, each containing one-fourth grain of morphine.

[1] It is axiomatic that statutes creating and defining crimes cannot be extended by implication or intendment; and before one can rightly be punished under a statute creating an offense, the acts done by him must be plainly and unequivocally alleged to be within the offense as created. Todd v. United States, 158 U. S. 278, 282, 15 Sup. Ct. 889, 39 L. Ed. 982; United States v. Cook, 17 Wall. 168, 21 L. Ed. 538; United States v. Reese, 92 U. S. 214, 23 L. Ed. 563; United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; United States v. Mann, 95 U. S. 580, 584, 24 L. Ed. 531; United States v. Carll, 105 U. S. 611, 26 L. Ed. 1135; United States v. Hess, 124 U. S. 483, 486, 8 Sup. Ct. 571, 31 L. Ed. 516; Pettibone v. United States, 148 U. S. 197, 204, 13 Sup. Ct. 542, 37 L. Ed. 419.

It is also a cardinal rule of criminal pleading that an indictment for an offense must allege directly and with certainty every essential element or ingredient of the offense and not by way of recital or infer-

ence; that it is not sufficient to allege it in the words of the statute unless those words of themselves set forth clearly, fully, and with certainty every essential ingredient of which the offense consists. In United States v. Cruikshank, above, Mr. Chief Justice Waite, delivering the opinion of the Supreme Court, said:

"In criminal cases, prosecuted under the laws of the United States, the accused has the constitutional right 'to be informed of the nature and cause of the accusation' against him. Const. Amend. 6. In United States v. Mills, 7 Pet. 142 [8 L. Ed. 636], this was construed to mean, that the indictment must set forth the offense 'with clearness and all necessary certainty, to apprise the accused of the crime with which he stands charged'; and in United States v. Cook, 17 Wall. 174 [21 L. Ed. 538] that * * * it is an elementary principle of criminal pleading that where the definition of an offense, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species—it must descend to particulars.'"

In United States v. Reese, 92 U. S. 214, 23 L. Ed. 563, the Chief Justice also said:

"If the Legislature undertakes to define by statute a new offense, and provide for its punishment, it should express its will in language that need not deceive the common mind. Every man should be able to know with certainty when he is committing a crime."

And Mr. Justice Clifford in his concurring opinion said:

"Offenses created by statute, as well as those at common law, with rare exceptions, consist of more than one ingredient, and, in some cases, of many; and the rule is universal that every ingredient of which the offense is composed must be accurately and clearly alleged in the indictment, or the indictment will be bad on demurrer, or it may be quashed on motion, or the judgment may be arrested before sentence, or be reversed on a writ of error."

[2] Where a statute defining an offense contains an *exception,* in the clause creating the offense, which is so incorporated with the language defining it that the offense cannot be accurately and clearly described if the exception is omitted, then the rules of good pleading require that the indictment must allege enough *to show that the accused is not within the exception;* but if the language creating the offense is so completely separable from the exception that the essential ingredients of the offense may be accurately and clearly defined without any reference to the exception, it need not be negatived therein, for it is then matter of defense to be shown by the accused. United States v. Cook, 17 Wall. 168, 173, 176, 177, 21 L. Ed. 538, and other cases above cited.

The constitutional validity of the act is not challenged, and, of course, will not be considered.

[3] With these principles in mind, the statute and indictment in question may be considered. Section 1 provides that on and after March 1, 1915, every person who produces, imports, manufactures, deals in, dispenses, sells, distributes, or gives away any of the drugs mentioned shall register with the proper revenue collector his name and place or places where such business is to be carried on, and pay

to the collector the special tax required. Plainly it is only the person or persons who engage in dealing in or in some manner handling the drugs as a part of his or their business that are to register and pay the required tax; and persons or associations not so engaged are not within its terms. The act is highly penal in its nature, and must be so construed as to include only those who are clearly within its terms. The provisions in section 1, that all provisions of existing law relating to special taxes, so far as applicable, are extended to the special tax herein imposed, indicates that the construction given by the Supreme Court to the "special tax law," which is section 3232 et seq., of the Revised Statutes of the United States (Comp. St. 1913, § 5955 et seq.), is applicable to this act.

The case of Ledbetter v. United States, 170 U. S. 606, 18 Sup. Ct. 774, 42 L. Ed. 1162, arose under section 3242 of the Revised Statutes of the United States, as amended by Act Feb. 8, 1875, c. 36, 18 Stat. 307 (Comp. St. 1913, §§ 5965, 5966). The indictment in that case charged the defendant, in the words of section 3242 as amended, with having "carried on the business of a retail liquor dealer without having paid the special tax therefor as required by law." The sufficiency of this indictment was not challenged by demurrer or otherwise before trial, but after being found guilty the defendant moved in arrest of judgment upon the ground, in effect, that the indictment charged no offense. In denying such motion the Supreme Court said:

"We have no disposition to qualify what has already been frequently decided by this court, that where the crime is a statutory one it must be charged with precision and certainty, and every ingredient of which it is composed must be clearly and accurately set forth, and that even in the cases of misdemeanors the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of the exact offense intended to be charged. * * * But we are of opinion that the statute in this case does define the offense with the requisite precision, and that the pleader has chosen the safer course in charging it in the language of this section. The offense does not consist in selling or offering for sale to a particular person distilled spirits, etc., in less quantities than five gallons at one time, but in carrying this on as a business; in other words, in the defendant holding himself out to the public as selling or offering for sale, etc. * * * It is quite evident that an indictment averring in the language of section 18 [Comp. St. 1913, § 5973], which defines a retail liquor dealer, that the defendant sold or offered for sale the liquors' named, without averring that he made this a business, and that he had not paid the special tax required by law, would be insufficient."

And finally the court said:

"We do not wish to be understood as approving the practice that was pursued in this case, or even as holding that this indictment might not have been open to special demurrer for insufficiency as to the allegations of time and place, but upon motion in arrest of judgment we think it is sufficient."

It seems quite clear that the act in question is to be construed as one imposing a tax upon those who engage in dealing in and handling the drugs mentioned as a part of their business, and that a single sale, or having in possession a small quantity of the drug, by one not engaged in the business of dealing in them, is not within the terms of the act.

But it is urged in behalf of the government, that possession alone of the drug *by any one* under section 8 of the act is unlawful, unless such person has registered and paid the tax as required by the act, and that an indictment charging any one of having possession of the drug is sufficient. Section 8 reads in this way:

"That it shall be unlawful for any person *not registered under the provisions of this act,* and who has not paid the special tax, * * * to have in his possession or under his control any of the aforesaid drugs, and such possession or control shall be presumptive evidence of a violation of this *section,* and also * * * of section one of this act."

The possession forbidden by this section is of a person "not registered under the provisions of this act." Plainly the person who has not so registered and paid the required tax refers only to one who is required by section 1 of the act to register and pay such tax. No other possession is referred to by *this section* of which there can be a violation, other than the possession of one who is required by section 1 to register and pay the tax. The section will reasonably bear no other interpretation; and as the defendant is not charged with being a person required by the act to register, or with having engaged in any business that requires him to do so, the indictment fails to charge an offense against him under this act. It was so held by Judge McCall in United States v. Friedman (D. C.) 224 Fed. 276, and United States v. Wilson (D. C.) 225 Fed. 82, by Judge Bourquin in United States v. Woods (D. C.) 224 Fed. 278, and by Judge Thomson in United States v. Jin Fuey Moy (D. C.) 225 Fed. 1003, upon indictments quite similar to the one in question.

A contrary conclusion, it is true, was reached in United States v. Brown (D. C.) 224 Fed. 135, by Judge Neterer in the Western district of Washington; but I am not satisfied that the conclusion reached by him is correct. It is by him assumed that the act in question is intended to prohibit the importation of opium for any purpose whatever, and that the drug is therefore an "outlaw" in this country, and for that reason Congress may rightly prohibit its importation, and that this was intended by the act in question. It seems to me that this conclusion is unwarranted; for by the act of Congress approved February 9, 1909 (35 Stat. 614, c. 100 [Comp. St. 1913, §§ 8800, 8801]), the importation of opium for other than the purpose of smoking is permitted under such rules and regulations as the Secretary of the Treasury may prescribe; and section 12 of the act in question especially provides that nothing contained therein shall be construed to impair, alter, or repeal any of the provisions of the act of Congress approved February 9, 1909, or any amendment thereof. Opium, therefore, and its derivatives, when imported under the provisions of that act, are legitimate articles of commerce. It seems entirely clear that a purchaser of opium, or some compound or derivative thereof, for medicinal use, from one authorized to sell or to dispense it, and who has it in his possession for such purpose, should not be required to register or pay the special tax exacted only because of such possession. The act in question does not in plain terms so provide, and it

is not within the rightful power of the courts to add such a provision thereto, either directly or impliedly, and an indictment that, fails to charge facts showing the possession of one to be unlawful does not charge an offense within the terms of this act.

[4] The last proviso in section 8 above, "that it shall not be necessary to negative any of the aforesaid *exemptions* in any complaint or indictment under this act," is but declaratory of the existing rule of pleading in the federal courts in criminal cases. Exemptions from liability for offenses created by acts of Congress are matters of defense; but matters *excepted* from the granting clause of the act are not within the terms of the act, and such matters must be negatived in the indictment or complaint.

I therefore reach the conclusion that the demurrer to this indictment should be sustained, the defendant discharged, and his bail exonerated. It is accordingly so ordered.