**UNITED STATES v. KATZ et al. (two cases).**

(District Court, E. D. Pennsylvania. April 29, 1925.)

Nos. 1123, 1124.

**1. Conspiracy ⬤⟐40—One whose concert with another is not necessary for commission of crime may be joined with him in indictment for conspiracy.**

If a person may alone be charged with a crime, another whose concert with him is not necessary for the commission of that crime may properly be joined with him in an indictment for a conspiracy to commit the crime.

**2. Intoxicating liquors ⬤⟐154(1)—Statute prohibiting sale, without making permanent record, held applicable only to permittees.**

National Prohibition Act, tit. 2, § 10 (Comp. St. Ann. Supp. 1923, § 10138½e), making it a crime to manufacture, purchase for sale, sell, or transport liquor without making a permanent record in manner prescribed by statute, held applicable to sales by permittees only, in view of section 6, tit. 2 (section 10138½c), prohibiting sales without permits, and sections 7, 8, 9, 11–13 (sections 10138½cc–10138½dd, 10138½ee–10138½ff).

**3. Statutes ⬤⟐241(1)—Penal statutes not to be extended beyond fair meaning of language employed.**

The maxims, "Ex antecedentibus et consequentibus fit optima interpretatio," and, "noscitur a sociis," are to be borne in mind in interpreting a statute, and a penal statute is not to be extended beyond the fair meaning of the language employed.

**4. Indictment and information ⬤⟐111(3)—Indictment charging conspiracy to sell, without making permanent record, held defective for failure to allege seller holder of permit.**

Indictments charging conspiracy to sell liquor, without making permanent record, required by National Prohibition Act, § 10, tit. 2 (section 10138½e), held defective for failure to allege that seller had a permit to sell liquor; such allegation being a matter of description and not a defensive negative averment.

Jacob Katz and George Senn, and Jacob Katz and Herman Feuerstein, were sepa-rately indicted for conspiracy to commit the offense of selling whisky without making a permanent record. On motions to quash and demurrer to bills of indictment. Indictments quashed.

George W. Coles, U. S. Atty., and Henry B. Friedman, Asst. U. S. Atty., both of Philadelphia, Pa.

John R. K. Scott and Benjamin M. Golder, both of Philadelphia, Pa., for defendants.

THOMPSON, District Judge. In indictment No. 1123, it is charged that the defendants Katz and Senn conspired to commit an offense against the United States, to wit, the offense on the part of Katz of selling for the Stewart Distilling Company to Senn 250 cases of whisky, without making the permanent record required under section 10, tit. 2, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½e).

In indictment No. 1124, it is charged that the defendants Katz and Feuerstein conspired to commit an offense against the United States, to wit, the offense on the part of Katz of selling for the Stewart Distilling Company to Feuerstein 25 barrels of whisky, without making the permanent record required under section 10. As the two indictments charge similar offenses in a similar manner, the discussion will be directed only to No. 1123.

Section 10 provides as follows:

"No person shall manufacture, purchase for sale, sell, or transport any liquor without making at the time a permanent record thereof showing in detail the amount and kind of liquor manufactured, purchased, sold, or transported, together with the names and addresses of the persons to whom sold, in case of sale, and the consignor and consignee in case of transportation, and the time and place of such manufacture, sale, or transportation. The commissioner may prescribe the form of such record, which shall at all times be open to inspection as in this act provided."

The objection raised to the indictment is that it does not charge that either Katz or the Stewart Distilling Company held a permit to sell, and that section 10 applies only to those holding permits, and therefore no offense is charged because, while Congress prohibits in section 6, tit. 2 (section 10138½c), the sale of liquor without first obtaining a permit from the commissioner, it was not intended by section 10 that a person making a sale, unlawful under section 6,

because without a permit, should be charged with the separate offense of making such unlawful sale without making a permanent record thereof showing the details set forth in the section.

[1] The pleader has apparently endeavored, in drafting this indictment, to involve the purchaser with the seller in a conspiracy to sell, but was confronted with the rule of criminal law that where an offense is such that a concert of action between two persons is logically necessary to the completion of the crime, that is to say, the crime cannot take place without concert, a charge of conspiracy against the two persons to commit that crime does not lie. 2 Wharton, Criminal Law, § 1339; United States v. Dietrich (C. C.) 126 F. 664; Chadwick v. United States, 141 F. 225, 72 C. C. A. 343; Shannon v. Commonwealth, 14 Pa. 226. Section 10, therefore, suggested a method of overcoming the difficulties of such a charge by setting up a conspiracy to sell without making a record of the sale. It is well settled that, if a person may alone be charged with a crime, another, whose concert with him is not necessary for the commission of that crime, may properly be joined with him in an indictment for conspiracy to commit the crime. Chadwick v. United States, supra; United States v. Rhodes (D. C.) 212 F. 513; Tapack v. United States, 220 F. 445, 137 C. C. A. 39.

If, therefore, one who does not hold a permit may be charged under section 10 with the failure to make records, another conspiring with him to fail to make the records may be indicted with him.

[2] The question then is whether Congress intended to make a violation of section 10 a crime as to one selling liquor, whether or not he held a permit. I fail to see any evidence in the act of any such intention on the part of Congress. Section 6 prohibits selling without first obtaining a permit and prescribes details concerning the time when permits to sell shall expire, the length of time permits to purchase shall be in force, provisions as to what the permits shall specify, and prohibits their issue to persons violating the terms of prior permits. It provides for the prescribing by the commissioner of forms of permits and applications, and empowers that official to require bonds, and provides for the review of his decision by a court of equity in the event of a refusal of an application for a permit.

Section 7, tit. 2 (section 10138½cc), provides for permits to physicians.

Section 8 (section 10138½d) directs the commissioner to cause blanks to be printed and furnished to physicians holding permits and directs the manner in which they shall be used.

Section 9 (section 10138½dd) provides for the citation of those holding permits to appear before the commissioner and authorizes revocation for cause shown.

While section 10 does not describe those who are prohibited from selling without making a record as those holding permits, the final paragraph of that section reads, "The commissioner may prescribe the form of such record which shall be at all times open to inspection as in this act provided," and apparently refers to section 34, tit. 2 (section 10138½u), providing that all records and reports kept or filed under the provisions of this act shall be subject to inspection by the commissioner or other officers designated, and that copies of such records and reports duly certified may be introduced in evidence.

Section 11, tit. 2 (section 10138½ee), requires manufacturers and wholesale or retail druggists to keep, as part of the records required of them, a copy of all permits to purchase on which sales are made, and prohibits them to sell except to persons having permits to purchase.

Without going into further details, sections 12 and 13, tit. 2 (sections 10138½f, 10138½ff), are obviously a continuation of the regulatory provisions in relation to those holding permits.

[3] The maxims, "Ex antecedentibus et consequentibus fit optima interpretatio," and, "Noscitur a sociis," are to be borne in mind in interpreting a statute, and a penal statute is not to be extended beyond the fair meaning of the language employed. United States v. Baltimore & O. S. W. R. Co., 159 F. 33, 86 C. C. A. 223. In that case Judge Severens said:

"A good statement of the doctrine as applied to the case before us is contained in 26 A. & E. Encycl. of L. 616 (2d Ed.), where it is said:

" 'In construing a section of an act, regard must first be had to the language of the clause itself, and, second, to other clauses in the same act, and that construction should be adopted which makes the whole act stand consistently together or reduces the inconsistency to the smallest possible limits.' "

Applying the maxims, and the doctrine thus expressed, I am forced to the conclusion that Congress intended section 10 to apply only to sales by permittees, and did not intend to attempt the impossible; that is, to

require those violating the law by selling without permits to make a permanent record of their criminal acts and to punish them for not so doing.

[4] It is argued on the part of the government that the indictments should stand because of the provisions of section 32, providing that it shall not be necessary in any affidavit, information, or indictment to include any defensive negative averments. But the offense intended to be charged is not subject to an exception which may be stated in the negative. If it is rightly concluded that the offense of failing to make a record is confined to those holding permits, it is a matter of description and not of defensive negative averment, and, if the defendants are to be held, it must be because Katz, the seller, is included among those forbidden to sell without making a record; that is, among those holding permits to sell. But there is no averment in the indictment describing Katz as one required to hold a permit, and therefore neither he nor his alleged coconspirator, Senn, are charged with an indictable offense. I think this reasoning is well sustained under the authority of the cases decided under the Harris Anti-Narcotic Act. Swartz v. United States (C. C. A.) 280 F. 115; United States v. Carney (D. C.) 228 F. 163; United States v. Wilson (D. C.) 225 F. 82; United States v. Friedman (D. C.) 224 F. 276; United States v. Woods (D. C.) 224 F. 278.

And finally in United States v. Jin Fuey Moy, 241 U. S. 394, it was settled by the Supreme Court, in an opinion by Mr. Justice Holmes, that an indictment would not lie under section 8 of that act except against those required to register under section 1. The charge in the indictment was a conspiracy of Jin Fuey Moy with Willie Martin to have in Martin's possession narcotic drugs, Martin not being registered with the collector of internal revenue and not having paid the special tax as required under section 1, tit. 2, of the act (section 10138½). Section 8 declares it unlawful for any person who is not registered and has not paid the special tax to have in his possession or control any of the said drugs. Judge Thomson of the Western District of Pennsylvania was sustained in holding the general words "any person" must be confined to the class of persons with whom the act previously had been purporting to deal; that is to say, those producing, importing, manufacturing, compounding, dealing in, dispensing, selling, distributing, or giving away such drugs.

It is concluded that the indictments fail to set forth an indictable offense, and the demurrers are therefore sustained, and the indictments quashed.