## UNITED STATES v. CURTIS.

(District Court, N. D. New York. February 7, 1916.)

1. POISONS ⬥4—CRIMINAL OFFENSES—SALES BY DEALERS.

Harrison Narcotic Law (Act Dec. 17, 1914, c. 1) § 2, 38 Stat. 785, provides, relative to opium or coca leaves, or any compound or preparation thereof, that it shall be unlawful to sell any of such drugs, except in pursuance of a written order of the person to whom the article is sold, but that nothing contained therein shall apply to the distribution of any such drugs to a patient by a physician registered thereunder in the course of his practice, provided that such physician shall keep a record of all such drugs dispensed, nor to the sale of any of such drugs by a dealer to a consumer under a written prescription issued by a physician registered thereunder. *Held*, that a physician who issues a prescription for an unusually large amount of the drugs, which prescription shows on its face that the quantity prescribed is unreasonable and unusual, or a dealer who fills such a prescription or order issued by a physician, is guilty of an offense, unless the prescription indicates the necessity for such an unusual quantity.

[Ed. Note.—For other cases, see Poisons, Cent. Dig. § 2; Dec. Dig. ⬥4.]

2. POISONS ⬥4—CRIMINAL OFFENSES—SALES BY DEALERS.

Under Harrison Narcotic Law, § 6, providing that the provisions of that act shall not apply to the sale of preparations and remedies not containing more than two grains of opium, provided they are sold as medicines and not to evade the intent of that act, the sale or dispensing of large and unusual quantities of the drugs, unaccompanied by explanation as to the necessity therefor, is the sale and dispensing thereof for the very purpose of evading the intent of the act, and unlawful.

[Ed. Note.—For other cases, see Poisons, Cent. Dig. § 2; Dec. Dig. ⬥4.]

3. POISONS ⬥9—CRIMINAL PROSECUTIONS—INDICTMENT.

Harrison Narcotic Law, § 1, makes it unlawful for any person required to register thereunder to sell any of the drugs to which that act applies without having registered and paid the special tax therein provided for. Section 8 makes it unlawful for one who has not registered and paid the special tax to have in his possession or under his control any of such drugs, and provides that such possession or control shall be presumptive evidence of a violation of that section, and also of a violation of section 1. An indictment charged that in violation of section 1 defendant unlawfully sold, dispensed, and distributed morphine sulphate tablets as a dealer to a consumer. *Held*, that this was equivalent to charging that he had them in his possession, and hence an offense was charged; but, as the offenses were charged as violations of section 1, proof of registration and the payment of the special tax would be a complete defense.

[Ed. Note.—For other cases, see Poisons, Cent. Dig. § 6; Dec. Dig. ⬥9.]

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Frederick W. Curtis was indicted for alleged violations of the act of Congress approved December 17, 1914, and known as the "Harrison Narcotic Law." On demurrer to the indictment. Indictment dismissed.

Harry V. Borst, Asst. U. S. Atty., of Amsterdam, N. Y.
E. Deane Vincent, of Troy, N. Y., for defendant.

RAY, District Judge. The indictment was found and filed January 10, 1916, and contains two counts. The first count charges that Frederick W. Curtis on or about the 2d day of March, 1915, at the city of Troy, Northern district of New York, in violation of the provisions of section 1 of the act of December 17, 1914, and the acts amendatory thereof and supplemental thereto,

"did unlawfully, wrongfully, and knowingly sell, dispense, and distribute to Mrs. J. McCullough 100 quarter-grain tablets of morphine sulphate, the said morphine sulphate tablets being a compound, manufacture, salt, derivative, and preparation of opium, and which said morphine tablets were sold, dispensed, and distributed by the said Frederick W. Curtis as a dealer to a consumer under and in pursuance of a written prescription issued by a physician registered under the said act, and which said prescription did not indicate that the said morphine sulphate tablets were for the treatment of an addict or habitué to effect a cure, or for a patient suffering from an incurable or chronic disease, and which said 100 quarter-grain morphine sulphate tablets were more than was necessary to meet the immediate needs of the patient, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

The second count of the indictment charges that the said defendant, at the city of Troy, in the Northern district of New York, on or about the 4th day of March, 1915, and at divers times between the said 4th day of March, 1915, and the 22d day of November, 1915, in violation of the said act, plainly referring to it,

"did unlawfully, wrongfully, and knowingly sell, dispense, and distribute 10.900 quarter-grain morphine sulphate tablets to Mrs. J. McCullough, said morphine sulphate tablets being a compound, manufacture, salt, derivative, and preparation of opium, and which said morphine sulphate tablets were sold, dispensed, and distributed by the said Frederick W. Curtis as a dealer to a consumer under and in pursuance of 109 written prescriptions issued by a physician, and which said written prescriptions were each for 100 quarter-grain morphine sulphate tablets, and which said prescriptions did not indicate that the said morphine sulphate tablets were for the treatment of an addict or habitué to effect a cure, or for a patient suffering from an incurable or chronic disease, and which said 109 prescriptions did not show a decreasing dosage or reduction of the quantity prescribed, and which said prescriptions were for a quantity more than was necessary to meet the immediate needs of a patient, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

The defendant, Frederick W. Curtis, demurs to this indictment and to each count thereof on the ground:

That "the acts of defendant averred in said indictment as constituting a crime against the peace and dignity of the United States of America are not prohibited by any law of the United States of America. That the acts of defendant averred in said indictment as a crime against the peace and dignity

229 F.—19

of the United States of America violated no law of the United States of America."

[1] The question presented, therefore, is: May a dealer in the narcotic drugs mentioned in the statute knowingly sell, dispense, and distribute on a written prescription issued by a physician duly registered under the act, at one time and under one prescription, 100 quarter-grain tablets of morphine sulphate, such prescription not indicating that the said morphine sulphate tablets are for the treatment of an addict or habitué to effect a cure, or for a patient suffering from an incurable or chronic disease; it being known to the seller that such quantity of 100 quarter-grain morphine sulphate tablets are more than are necessary to meet the immediate needs of the patient holding the prescription and to whom the tablets are sold?

If a dealer without violating the law may do this, then, to a customer holding the prescription of a physician which does not indicate that the morphine tablets are for the treatment of an addict or habitué to effect a cure, or for a patient suffering from an incurable or chronic disease, and knowing that the quantity prescribed or called for by the prescription is more than is necessary to meet the immediate needs of the patient, he may sell and deliver or dispense and distribute any amount of such drug, provided only the amount sold, dispensed, or distributed is called for by the prescription. In short, there is no limitation on the amount that may be sold, dispensed, and distributed by the dealer, provided the amount sold or distributed is called for by the prescription issued by the registered physician.

I am not impressed with the contention of the learned counsel for the defendant that this indictment does not charge the commission of an indictable offense under the provisions of the act referred to. It is quite true that the act does not prescribe or limit in terms the amount in weight or quantity of opium or coca leaves, or any compound, manufacture, salt, derivative, or preparation thereof, which may be sold, dispensed, or distributed by a dealer to a consumer under and in pursuance of a written prescription issued by a physician, dentist, or veterinary surgeon registered under the act. It is also true that the act does not in terms limit in weight or quantity the amount of such drugs which a physician, dentist, or veterinary surgeon registered under the act may prescribe in the course of his professional practice only. However, it is self-evident, I think, that by section 2 of the act Congress has made it an offense and unlawful for any person to sell, barter, exchange, or give away any of the aforesaid drugs, except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue. It is provided that nothing contained in section 2 shall apply to the dispensing or distribution of any of the aforesaid drugs to a patient by a physician, dentist, or veterinary surgeon registered under this act "in the course of his professional practice only," provided that the physician, etc., shall keep a record of all such drugs dispensed or distributed, showing the amount dispensed or distributed, etc. Subdi-

vision "b" of section 2 also provides that nothing contained in section 2 shall apply—

"to the sale, dispensing, or distribution of any of the aforesaid drugs by a dealer to a consumer under and in pursuance of a written prescription issued by a physician, dentist, or veterinary surgeon registered under this act," etc.

It is plain, it seems to me, that it was the purpose of Congress to limit the quantity of these drugs that may be sold or dispensed by a dealer under and pursuant to a written order issued by a physician, and to limit the amount and quantity to such an amount and quantity as is or ought to be called for by a prescription issued by the physician "in the course of his professional practice only." Section 2 says in terms that nothing contained in this section shall apply:

"(b) To the sale, dispensing or distribution of any of the aforesaid drugs by a dealer to a consumer under and in pursuance of a written prescription issued by a physician, dentist or veterinary surgeon registered under this act."

And then follows a proviso that the prescription shall be dated and signed and that the prescription shall be preserved, etc. Is it reasonable or probable that Congress intended that physicians may prescribe unlimited quantities and that dealers may fill such prescriptions? Section 1 of the act contains this provision:

"That the commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall make all needful rules and regulations for carrying the provisions of this act into effect."

Treasury Department regulation 2172, issued by the Treasury Department, dated March 9, 1915, and signed by David A. Gates, Acting Commissioner of Internal Revenue, and approved by W. G. McAdoo, Secretary of the Treasury, contains the following:

"*Fraudulent Prescriptions.*—A druggist, when receiving a prescription for any of the drugs coming within the scope of this law, should carefully scrutinize such prescription, and where he has reason to believe that the same is forged, or that the quantity of drug prescribed is unusually large, he should, before filling such prescription, satisfy himself that the same is genuine and properly prepared. Every druggist should know the signature of the reputable, legitimate physicians in his locality, and should he fill a fraudulent prescription he would be liable to prosecution."

A prescription, even if issued by a physician, which on its face calls for an unusually and unreasonably large quantity of the drug, is fraudulent of course, as it bears internal evidence that it is not issued in good faith and that it is not a prescription. Treasury Department circular No. 2200, dated May 11, 1915, says:

"While the law does not limit or state the quantity of any of the narcotic drugs that may be so dispensed or prescribed at one time, it does provide that it shall be unlawful to obtain by means of order forms any of the aforesaid drugs for any purpose other than the use, sale, or distribution thereof in the 'conduct of a lawful business in said drugs or in the legitimate practice of his profession'; further, that all preparations and remedies containing narcotic drugs coming within the scope of this act are 'sold, distributed, given away, dispensed, or possessed as medicines and not for the purpose of evading the intentions and provisions of this act'; and it is further provided that it shall be unlawful for any person not registered to have in his possession or under his control any of the drugs, preparations, or remedies 'which have

not been prescribed in good faith by a physician, dentist, or veterinary surgeon registered under this act.'

"Therefore where a physician, dentist, or veterinarian prescribes any of the aforesaid drugs in a quantity more than is apparently necessary to meet the immediate needs of a patient in the ordinary case, or where it is for the treatment of an addict or habitué to effect a cure, or for a patient suffering from an incurable or chronic disease, such physician, dentist, or veterinary surgeon should indicate on the prescription the purpose for which the unusual quantity of the drug so prescribed is to be used. In cases of treatment of addicts these prescriptions should show the good faith of the physician in the legitimate practice of his profession by a decreasing dosage or reduction of the quantity prescribed from time to time, while, on the other hand, in cases of chronic or incurable diseases such prescriptions might show an ascending dosage or increased quantity. Registered dealers filling such prescriptions should assure themselves that the drugs are prescribed in good faith for the purpose indicated thereon, and, if there is reason to suspect that the prescriptions are written for the purpose of evading the intentions of the law, such dealers should refuse to fill same."

This is a construction of the law and of its meaning, intent, and purpose. It shows what is and what is not a prescription, and what sort of an order a registered dealer, holding a license showing he has paid the special tax, under the law, may fill. I am of the opinion, and hold, that a physician who issues a prescription for an unusually large amount of these drugs, or of any one of them, and which prescription shows on its face that the quantity prescribed is unreasonable and unusual, is guilty of an offense under the law, unless such prescription indicates the necessity therefor; and I am also of the opinion, and hold, that the dealer who fills such a prescription or order issued by a physician is guilty of an offense under the law. If not so, then, as already stated, physicians may prescribe unlimited quantities, and druggists may fill the prescriptions with impunity, and thus many of the evils sought to be remedied by the enactment of the so-called Harrison Narcotic Law will be augmented, instead of being remedied.

[2] Section 6 of the act provides that:

"The provisions of this act shall not be construed to apply to the sale, distribution, giving away, dispensing, or possession of preparations and remedies which do not contain more than two grains of opium: * * * Provided, that such remedies and preparations are sold, distributed, given away, dispensed, or possessed as medicines and not for the purpose of evading the intentions and provisions of this act."

It is evident to my mind that the sale, distribution, giving away, or dispensing of large and unusual quantities of these drugs, unaccompanied by explanation as to the necessity therefor, are sales and dispensing of the drug for the very purpose of evading the intentions and provisions of the act and therefore unlawful.

[3] Section 8 of the act provides:

"That it shall be unlawful for any person not registered under the provisions of this act, and who has not paid the special tax provided for by this act, to have in his possession or under his control any of the aforesaid drugs; and such possession or control shall be presumptive evidence of a violation of this section, and also of a violation of the provisions of section 1 of this act."

Both counts of the indictment under consideration charge that the defendant, Frederick W. Curtis, "did unlawfully, wrongfully, and

knowingly sell, dispense, and distribute  * * *  morphine sulphate tablets," and that he sold and dispensed same as a dealer to a consumer, etc.  This is equivalent to charging that he had these drugs in his possession.  In United States v. Wilson (D. C.) 225 Fed. 82, it was held:

"Harrison Anti-Narcotic Law Dec. 17, 1914, § 8, establishes the rule of evidence that, upon proof that a defendant was producing, importing, manufacturing, dealing in, dispensing, selling, distributing, or giving away, as mentioned in section 1, cl. 1, opium or coca leaves, and that a narcotic was found in his possession, he is presumptively guilty of violating the act, that then the burden of proof is upon defendant to show affirmatively that he is not one of the class mentioned in section 1 as being required to register, or, if so, that he had registered and paid the special tax."

If this be good law, then this indictment charges an offense, for it clearly charges that the defendant had the drugs in his possession at the time mentioned in the indictment, else he could not have sold, dispensed, and distributed them to the person named in the indictment. If in point of fact the defendant had registered and paid the special tax, then proof of such facts on the trial of the indictment will be a complete defense, and result in the acquittal of this defendant, inasmuch as both counts charge a violation of section 1 of the act, while the particular counts specified constitute an offense under and a violation of section 2 of the act, as the defendant is not within the exception of subdivision "b" of such section.

As I understand the purpose of the pleader, there should be a new indictment, and the one under consideration should be dismissed.  I am familiar with the holding in United States v. Friedman (D. C.) 224 Fed. 276, but am unable to agree with the learned judge who decided that case.