UNITED STATES v. DOREMUS.

(District Court, W. D. Texas, San Antonio Division.   January 2, 1918.)

No. 2254.

1. CONSTITUTIONAL LAW ⬉27—RESERVE POWERS OF STATE.
   Under Const. Amend. 10, declaring that powers not delegated to the United States by Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people, the states have power to regulate matters of internal police within their limits not only as to the health, morals, and safety of the public, but also to whatever promotes the public peace, comfort, and convenience.

2. INDICTMENT AND INFORMATION ⬉140(1), 150—SUFFICIENCY OF INDICTMENT —DEMURRER.
   On demurrer or motion to quash, the allegations of an indictment are to be assumed true.

3. CONSTITUTIONAL LAW ⬉27—POISONS ⬉2—OFFENSES—STATUTES—VALIDITY.
   Harrison Anti-Narcotic Act Dec. 17, 1914, c. 1, 38 Stat. 785 (Comp. St. 1916, §§ 6287g–6287q), providing for registration of, with collectors of internal revenue, and imposing a special tax upon, all persons who produce, import, manufacture, compound, deal in, sell, distribute, or give away opium or cocoa leaves, provides in section 2 (section 6287h) that it shall be unlawful for any person to sell, barter, exchange, or give away such drugs except in pursuance of a written order of the person to whom such article is sold, on a form issued in blank for that purpose by the commissioner of internal revenue, and that every person who shall accept any such order shall preserve the same for a period of two years in such a way as to be readily accessible to inspection by any officer, agent, or employé of the Treasury Department, but that nothing contained in the section shall apply to the dispensing or distribution of such drugs to a patient by a physician, dentist, or veterinary surgeon, provided that such physician, etc., shall keep a record of all drugs dispensed or distributed, showing the amounts dispensed or distributed, etc., or to the sale, dispensing, or distribution of any such drugs on a prescription issued by the physician, provided that such prescription shall be dated as of the date on which signed, and shall be signed by the physician, etc., and preserved by the dealer.   An indictment in the words of the statute alleged that defendant, a Texas physician, who had duly registered and paid the special tax of one dollar, did unlawfully and knowingly sell and give away a quantity of heroin tablets, a derivation of opium, which sale was not made in pursuance of a written order on

a form issued in blank by the commissioner of internal revenue. A second count of the indictment, which was identical with the first, except that it charged that defendant did unlawfully, knowingly, and willfully sell, dispense, and distribute heroin tablets not in the regular course of his professional practice, and not in the treatment of any disease, but to one then addicted to the drug habit. The two counts in the indictment do not state offenses against the laws of the United States. The acts charged to have been omitted and committed are violations of police regulations incidental to the taxing purpose of the act, and which do not tend to render effectual its prime object, revenue. To that extent the act is in violation of article 10 of the Amendments to the Constitution of the United States.

4. POISONS ⬥2—PENAL STATUTE—CONSTRUCTION.
    The rule of strict construction applies to the criminal provisions of the Harrison Anti-Narcotic Act.

Charles T. Doremus was charged with unlawfully dealing in narcotics in violation of Act Dec. 17, 1914. Hearing on demurrer to indictment in style motion to quash. Demurrer or motion to quash sustained, and indictment dismissed.

Hugh R. Robertson, Asst. U. S. Dist. Atty., of San Antonio, Tex.
Haltom & Haltom, of San Antonio, Tex., for defendant.

WEST, District Judge. Omitting formal parts, the first and second counts of the indictment are substantially as follows:

First Count: "That heretofore, to wit, on or about the 11th day of March, A. D. 1915, at the city of San Antonio, Western District of Texas, and the San Antonio division thereof, one C. T. Doremus, a physician, who had duly registered, and who had paid the special tax as required by the act of Congress approved December 17, 1914, entitled 'An act to provide for the registration of, with the collectors of internal revenue, and to impose a special tax upon all persons who produce, import, manufacture, compound, deal in, dispense, sell, distribute, or give away opium or cocoa leaves, their salts, derivatives or preparations, and for other purposes,' did unlawfully, fraudulently, and knowingly sell and give away and distribute to one Alexander Ameris, alias Alexander Myers, a certain quantity of heroin, to wit, five hundred (500) one-sixth grain tablets of heroin, a derivative of opium, which said sale was not made in pursuance of a written order of the said Alexander Ameris, alias Alexander Myers, to the said C. T. Doremus on a form issued in blank for that purpose by the commissioner of internal revenue of the United States, as required by the act of Congress of December 17, 1914, aforesaid."

Second Count: This count is identical with the first count, except that the offense charged is that defendant "did unlawfully, knowingly, and willfully sell, dispense, and distribute to one Alexander Ameris, alias Alexander Myers, five hundred (500) one-sixth grain tablets of heroin, a derivative of opium, not in the regular course of the professional practice of the said C. T. Doremus, and not for the treatment of any disease from, which the said Alexander Ameris, alias Alexander Myers, was then and there suffering, but, as was then and there well known to the said Doremus, the said Alexander Ameris, alias Alexander Myers, was then and there a person addicted to the use of the drug aforesaid as a habit, being a person popularly known as a 'dope fiend,' and the said C. T. Doremus did sell, dispense, and distribute the drug aforesaid for the purpose of gratifying his appetite for said drug as a habitual user of the same."

These counts are followed by eight others, identical with the first and second counts, except as to dates, names of parties to whom the

drug was dispensed, different quantities, etc.; it being necessary, in passing upon the motion, to consider only the first and second counts.

The first count charges a violation of the first sentence of section 2 of the act, in a sale by defendant of the prohibited drug as having been made without a written order from the purchaser to defendant seller. The second count charges a violation of paragraph (a) of the same section, in the sale, dispensing, and distribution by the defendant of the prohibited drug, "not in the regular course of his professional practice." Section 2 and paragraphs (a) and (b) are as follows:

"It shall be unlawful for any person to sell, barter, exchange, or give away any of the aforesaid drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the commissioner of internal revenue. Every person who shall accept any such order, and in pursuance thereof shall sell, barter, exchange, or give away any of the aforesaid drugs, shall preserve such order for a period of two years in such a way as to be readily accessible to inspection by any officer, agent, or employé of the Treasury Department duly authorized for that purpose, and the state, territorial, district, municipal, and insular officials named in section five of this act. Every person who shall give an order as herein provided to any other person for any of the aforesaid drugs shall, at or before the time of giving such order, make or cause to be made a duplicate thereof on a form to be issued in blank for that purpose by the commissioner of internal revenue, and in case of the acceptance of such order, shall preserve such duplicate for said period of two years, in such a way as to be readily accessible to inspection by the officers, agents, employés, and officials hereinbefore mentioned. Nothing contained in this section shall apply—

"(a) To the dispensing or distribution of any of the aforesaid drugs to a patient by a physician, dentist, or veterinary surgeon registered under this act in the course of his professional practice only: Provided, that such physician, dentist, or veterinary surgeon shall keep a record of all such drugs dispensed or distributed showing the amount dispensed or distributed, the date, and the name and address of the patient to whom such drugs are dispensed or distributed, except such as may be dispensed or distributed to a patient upon whom such physician, dentist or veterinary surgeon shall personally attend; and such record shall be kept for a period of two years from the date of dispensing or distributing such drugs, subject to inspection, as provided in this act.

"(b) To the sale, dispensing or distribution of any of the aforesaid drugs by a dealer to a consumer under and in pursuance of a written prescription issued by a physician, dentist, or veterinary surgeon registered under this act: Provided, however, that such prescription shall be dated as of the day on which signed and shall be signed by the physician, dentist, or veterinary surgeon who shall have issued the same: And provided further, that such dealer shall preserve such prescription for a period of two years from the day on which such prescription is filled in such a way as to be readily accessible to inspection by the officers, agents, employés, and officials hereinbefore mentioned." Comp. St. 1916, § 6287h.

The first paragraph of the motion to quash, or demurrer, is as follows:

"The pretended law upon which this indictment is based is void because the Congress of the United States had not, and has not, the power to pass the act of December 17, 1914, except such portions thereof as provide for fixing and collecting a tax, and except such portions as forbid interstate shipments of the drugs mentioned in the said act; and the overt acts charged against the defendant, if true, would not, and did not, in any way defeat, prevent, hinder or delay the collection of the special tax required to be paid.

"(a) Because, when a person has paid the tax and registered as required by law, his right to dispose of the enumerated drugs cannot be prohibited by the Congress, unless such disposition may or does or tends to prevent, hinder, or delay the collection of the revenue.

"(b) Because said act of Congress, except so far as it provides for the payment of a special tax, and the register of the names of the parties paying the tax, and except so far as it regulates interstate commerce in the named drugs, is purely a police measure, upon which the Congress is without power to act."

Only those grounds mentioned in the first paragraph will be considered.

The motion avers that the act is a revenue or taxing measure; that the act of omission charged as an offense in the first count, and the act committed, charged as an offense in the second count, if true, are merely violations of local police regulations, which the Congress has no power to establish—the act to that extent being an invasion of the reserved power of local regulation inherent in the state governments, and in violation of the Constitution of the United States.

[1] Amendment to the Constitution, art. 10, provides:

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."

In construing this article, the Supreme Court of the United States in many cases has held that "the power of the states to regulate matters of internal police within their limits applies not only to the health, morals, and safety of the public, but also to whatever promotes the public peace, comfort, and convenience." Boston Railroad Co. v. Massachusetts, 97 U. S. 25, 24 L. Ed. 989. See, also, many authorities to the same effect cited in paragraph 10, Notes of Decisions, U. S. Compiled Statutes, Annotated, 1916, vol. 11, p. 14419. This reserved police power retained in the states has reference to the practice of medicine, etc. See Meffert v. Packer et al., 195 U. S. 625, 25 Sup. Ct. 790, 49 L. Ed. 350.

The government's counsel declares that the decision of the United States Circuit Court of Appeals for the Fifth Circuit in the case of Thurston v. United States, 241 Fed. 335, 154 C. C. A. 215, is conclusive. The first and second counts of this indictment are identical in substance with the first count of the indictment in that case, there held to be sufficient. The indictment in the Thurston Case charges a conspiracy to commit the same alleged offenses as are sought to be charged in the first and second counts here. An examination of that case discloses that the constitutional question involved there related to the right of search and seizure, and not to the reserved power of domestic regulation—the question here. The remaining question considered by the court in the Thurston Case, was whether an offense against the law was charged in the indictment. Upon that point the court merely remarked that the count fully informed the defendants of the charges they were brought to answer, and fully showed that it was sufficient to put the defendants on trial on the charge of conspiracy to violate the Harrison Narcotic Law. Whether or not the offenses there charged invaded the province of the state's reserved police power was not

considered. The court, therefore, does not hold that the act is not an attempted exercise of the police power, as contended by the government.

In the case of United States v. Jin Fuey Moy, 241 U. S. 394, 36 Sup. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854, the act is referred to by counsel for the government in that case as one to which Congress gave the appearance of a taxing measure in order that it might have a coating of constitutionality, but that in reality it was a police measure that strained all the powers of the Legislature; to which reference Mr. Justice Holmes adverted, stating:

"It may be assumed that the statute has a moral end as well as a revenue end in view, but we are of opinion that the district court, in treating those ends as to be reached only through a revenue measure and within the limits of a revenue measure, was right."

See, also, Lowe v. Farbwerke-Hoechst Co., 240 Fed. 671, 153 C. C. A. 469.

The act of August 2, 1886, c. 840, 24 Stat. 209, known as the "Oleomargarine Act," though a taxing and revenue act, and as such held constitutional (In re Kollock, 165 U..S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813), had for its moral end the idea of protecting the public against sales of oleomargarine by unscrupulous dealers as butter. In that case Chief Justice Fuller expressed himself as follows:

"The act before us is on its face an act for levying taxes, and, although it may operate in so doing to prevent deception in the sale of oleomargarine as and for butter, its primary object must be assumed to be the raising of revenue. * * * The oleomargarine legislation does not differ in character from this [laws relating to distilled spirits and tobacco], and the object is the same in both, namely, to secure revenue by internal taxation, and to prevent fraud in the collection of such revenue. Protection to purchasers in respect of getting the real, and not a spurious, article cannot be held to be the primary object in either instance, and the identification of dealer, substance, quantity, etc., by marking and branding, must be regarded as means to effectuate the objects of the act in respect of revenue."

In Dougherty v. United States, 108 Fed. 56, 47 C. C. A. 195, where the Oleomargarine Act, § 6 (Comp. St. 1916, § 6218), was attacked as being a police regulation and as such in violation of the Constitution, District Judge Bradford, referring to the Kollock Case and confirming same, said:

"The marking, stamping and branding, required by the regulations, must, therefore, be regarded as 'means to effect the object of the act in respect of revenue.'"

In testing the constitutional question raised by the motion, the controlling factor, as declared by Justice Fuller, is whether or not the acts charged as offenses in the two counts are to be regarded as "means to effect the objects of the act in respect of its revenue."

Opium is said to be an outlaw drug. One of the purposes of the act is to prohibit its importation. United States v. Brown (D. C.) 224 Fed. 137. The act likewise prohibits its interstate transportation except under stringent regulations. Opium and its derivatives, in surgery and in medicine, have proven invaluable for the alleviation of pain, and are used to a greater extent, perhaps, than any other known

drug possessing similar narcotic properties. The necessity for its importation and the safeguarding its use and abuse is evidenced by a casual incursion into its history and uses. Act Feb. 9, 1909, c. 100, 35 Stat. 614, as amended by the present act of January 17, 1914, c. 9, 38 Stat. 275 (Comp. St. 1916, §§ 8800-8801f), indicates the settled policy of our government to rigidly restrict the importation of opium into this country and to strictly guard its use and abuse. This brings home the truth of the statement that the act in question has a moral end as well as a revenue end. The responsibility is with the courts to see that those ends are reached through a revenue measure and within the limits of a revenue measure.

[2-4] Do the two counts of the indictment state offenses against the laws of the United States? Applying the test prescribed by Justice Fuller, is the sale by the defendant to Alexander Ameris of the inhibited drug, in the first count, "not in pursuance of the written order" required by the statute, to be regarded as a means to effect the object of the act in respect of its revenue? And in the second count, Is the sale by the defendant to Alexander Ameris of the inhibited drug, "not in the regular course of his professional practice as a physician and not for the treatment of any disease from which a patient was then suffering, the said Ameris being a person addicted to the use of the inhibited drug, these facts being well known to the defendant," to be regarded as a means to effect the object of the act in respect of its revenue?

In testing the sufficiency of the demurrer, the allegations of the first and second counts are assumed to be true.

The main purpose of the act is to provide for a tax and enforce its collection for the legitimate sale or disposal of opium and its derivatives. Consequently any regulation of law or provision that aids in the enforcement of the collection of this tax is within the rights of Congress. In re Kollock, supra. The two counts show that the defendant was a physician who had duly registered and paid the special tax. It is not made to appear in what particular the requirement that a written order must be given by the purchaser to the seller renders effective the enforcement or collection of the tax, especially in this instance, where the tax is shown to have been paid by a person duly registered. It is clear, looking to the provision of the statute as to this requirement, that it has an important bearing, as a police measure, in safeguarding the dispensing and distribution of the drug so that it may be limited in its use to persons actually in need of same as a medicine. A consideration of the whole act, and of the many regulations of the Treasury Department governing the sale and control of the drug, leads to the conclusion that greater efforts are made in the measure to protect against misuse of the drug than to its enforcement as a revenue act.

This reasoning applies more forcibly to the second count. There the regulations requiring the drug to be dispensed by a physician only in the course of professional practice, after having duly registered and paid the tax, can only be a police measure looking primarily to the protection of the public against the abuse of this drug, not remotely serving as an aid or means to effect the object of the act in respect of its revenue.

The offenses charges in the first and second counts of this indictment are stated in the very words of the statute, and as such prescribe regulations governing the sale, dispensing, and distribution of opium and its derivatives. Are those regulations to be considered as incidental or as means to enforce the collection of the revenue?

Nine years before the passage of this act the state of Texas, in the exercise of its reserved power of domestic regulation, passed certain laws, penal in character, which restricted and limited the sale and disposition of opium and its derivatives. Laws of Texas, Acts 1905, pp. 45–46, R. Cr. S. 1911, Penal Code, tit. 12, c. 5, arts. 747, 748, 749. The provisions of this regulatory act are in many particulars substantially the same as in this revenue bearing and taxation act. For instance: The state statutes require that the inhibited drugs may only be obtained (1) upon the original written order or prescription of a lawfully authorized practitioner of medicine, * * * containing the date and name of the person for whom prescribed; (2) the original order must be permanently retained by the person, firm, or corporation authorized to sell or dispense the drug; (3) it is made unlawful for any practitioner of medicine to prescribe the drug for the use of an habitual user.

The enactment of local police laws, regulating and restricting the use of opium and its derivatives, and their similarity with the provisions of the act of Congress, are conclusive of the state's purpose to exercise its power to regulate, and persuasive that the inclusion of the same provisions in a taxing measure by Congress was to further the same moral ends that prompted the state in enacting them.

The national act provides for an annual tax of one dollar for each registered "dealer," and then so restricts and narrows the uses of the drug that no vital or important excess of revenue could reasonably be expected. The tax is nominal, yet the penalty for violating any provision of the act is so disproportionate to the gravamen of the offense (U. S. v. Woods [D. C.] 224 Fed. 279) as to be further convincing that Congress was more concerned with the moral ends to be subserved than with the revenue to be derived.

The Supreme Court of the United States, in Mugler v. Kansas, 123 U. S. 623–661, 8 Sup. Ct. 273, 297 (31 L. Ed. 205), referring to the so-called prohibition statute of Kansas, attacked in that case as unconstitutional as being in effect a confiscation of property under the pretense of protecting the public morals, health, and safety, says:

"If, therefore, a 'statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."

Applying this rule of construction, it would seem to be the court's duty to see that the real purpose of the act as a revenue measure should be carried into effect, but that those provisions of the act regulating and restricting traffic in the outlaw drug should be confined to their incidental functions, "as means to effect the object of the act in respect of its revenue," and to that extent strictly construed.

It does not appear (1) that the sale of the drug by the defendant to a person not made in pursuance of that person's written order, as required by the statute, as charged in the first count; and (2) that the sale by defendant "not in the regular course of professional practice," being to a "dope fiend," the fact being well known to defendant, etc., as charged in the second count—tend to render effectual the collection of the revenue tax imposed by the act. On the contrary, the same substantial and similar provisions are embodied in the penal statutes of the state of Texas, which, in their enactment, exercised those sovereign police powers of domestic regulation conceded as its right. To extend the incidental moral objects of the taxing measure by a liberal construction would be to unfairly and without certain right encroach upon the state's sovereign powers. This should not be permitted, especially where doubt exists (as in this case) as to whether the questioned provisions of the law were means which reasonably tend to render effectual the enforcement of the law by the payment of the tax imposed. The rule of strict construction applies to criminal statutes such as this.

It is accordingly held that the indictment does not state an offense against the laws of the United States, in that the acts of the defendant charged in the words of the statute to have been omitted and committed therein are violations of police regulations incidental to the taxing purpose of the act, but which do not tend to render effectual its prime object, revenue. To that extent the act is in violation of article 10 of the amendments to the Constitution of the United States.

The defendant's demurrer or motion to quash the indictment is sustained, and an order dismissing the indictment will be entered in due course.

In reaching the foregoing conclusions the questions involved have been given careful thought, and, in addition to the authorities cited, the following cases have been considered: Austin v. Tennessee, 179 U. S. 343, 21 Sup. Ct. 132, 45 L. Ed. 224; May v. New Orleans, 178 U. S. 496, 20 Sup. Ct. 976, 44 L. Ed. 1165; U. S. v. Woods (D. C.) 224 Fed. 278; U. S. v. Wilson (D. C.) 225 Fed. 82; United States v. Jin Fucy Moy (D. C.) 225 Fed. 1003; Tucker v. Williamson (D. C.) 229 Fed. 201; United States v. Charter (D. C.) 227 Fed. 331; United States v. Curtis (D. C.) 229 Fed. 288; United States v. Friedman (D. C.) 224 Fed. 276.