### UNITED STATES v. ROSENBERG.

(District Court, S. D. New York. July 17, 1918.)

1. INTERNAL REVENUE ⟨⟩2—ANTI-NARCOTIC LAW—INVALIDITY AS REVENUE LAW.

Harrison Anti-Narcotic Law, § 2, forbidding any person selling opium to another not presenting a written blank furnished by a revenue collector, is not invalid as a revenue provision, though its chief purpose may be to control distribution, by empowering physicians exclusively to distribute the drug only as a medicine, and thereby suppress consumption by addicts.

2. INDICTMENT AND INFORMATION ⟨⟩63—CONCLUSIONS—PLEADING ULTIMATE FACTS.

In an indictment of a physician under Harrison Anti-Narcotic Law, § 2, for dispensing opium "not in the course of his professional practice," the phrase quoted, following the language of the statute, is not bad as a conclusion of the pleader, as it states the ultimate facts.

Jacob Rosenberg was indicted for violation of the Harrison Anti-Narcotic Law, and he demurs to the indictment. Demurrer overruled.

Demurrer to an indictment for the violation of section 2 of Act Dec. 17, 1914, c. 1, 38 Stat. at Large, pp. 785, 786 (Comp. St. 1916, § 6287h) known as the Harrison Anti-Narcotic Law. The indictment charges that the defendant was a physician registered with the collector of internal revenue as a dealer, distributor, and dispenser of opium and its derivatives, and that as such he dispensed to one Stutzenberg a quantity of opium; that he so dispensed the heroin, "not in the course of his professional practice only," and not "in pursuance of a written order" from Stutzenberg of the kind prescribed by the act. The second and third counts concern other transactions of the same kind with other persons.

Francis G. Caffey and John E. Walker, both of New York City, for the United States.

Abraham Levy, of New York City, for defendant.

LEARNED HAND, District Judge (after stating the facts as above). [1] The chief question raised by the demurrer is whether section 2 of the Harrison Act is valid as a revenue provision, as which alone it can stand. That section forbids any person from selling opium to another who does not present a written blank furnished by the collector of internal revenue. The section later provides that the collector may furnish these blanks only to registered persons, who are defined by section 1, and who, roughly speaking, must be either sellers or makers. Presumably the phrase "any person" in the first sentence of the section, means "any registered person," as in section 8 (U. S.

v. Jin Fuey Moy, 241 U. S. 394, 36 Sup. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854), though that question is not of much consequence here. In any view it follows that section 2 forbids the sale of opium to any one not himself in turn a seller, and that it therefore forbids any distribution whatever to consumers, and this prohibition would be absolute except for the provisos, (a), (b), (c), and (d). The first of these allows a physician to prescribe opium "in the course of his professional practice only"; the second allows "a dealer" to fill the physician's prescription. Provisos (c) and (d) create other exceptions not here of moment.

Now, it is of course quite true (McCray v. U. S., 195 U. S. 27, 24 Sup. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561), and indeed it has been long recognized (Veazie Bank v. Fenno, 8 Wall. 533, 19 L. Ed. 482), that in the exercise of its taxing powers Congress may in fact be actuated, in part, anyway, by purposes quite different from the raising of revenue, and the courts will nevertheless not question the result; and so it does not matter that the chief purpose of this section is pretty obviously not to raise revenue, but to control the distribution of opium. There must, however, be some objective test to determine how far the ancillary provisions of the act have any actual pertinency to a revenue measure, because it is clear that some degree of irrelevancy will exclude a subsidiary provision from the scope of the power. This, indeed, is involved in the court's right to scrutinize the power at all.

The effect of the act as a whole is in the first place to require all those who make or traffic in opium to register and pay their fees, and also to require all those registered persons who buy opium to pay for the blanks. In so far as it merely forbids all those who do not pay those sums from buying or selling or making opium, no question can arise. A question does arise over those provisions of section 2 which in effect prescribe that the distribution to consumers must be either by a physician or under his supervision. It is at first blush a little hard to see how this conduces to the collection of the registration fees, or how it tends to increase the number of registrants. U. S. v. Doremus (D. C.) 246 Fed. 958. Nevertheless, as in all such cases, the statute must be sustained so long as any plausible support for it can be found in the powers of Congress, and I think that a fair analysis can be made to show such a support here, however remote it may in fact have been from the purposes of those who framed and passed the act. The tax being an excise, it was an essential part of its purpose that there should be no sales by unregistered persons. Yet the final sale must be to an unregistered person, the consumer. There was, therefore, a genuine difficulty in insuring that the sale to any unregistered person should be to a consumer, and that he should not in turn resell. Physicians were naturally the class who would dispense a large part of the drug to consumers, whether used as a medicine or to gratify an appetite. It was a reasonable contrivance to limit the final sales to physicians upon the theory that they were the most reliable of all available classes of distributors to insure its limitation to genuine consumers. I cannot say, therefore, that it was not a fair

piece of administrative machinery to empower this class exclusively to distribute the drug.

The section does, however, go further than this, because it forbids physicians selling opium except as a medicine, and it must be confessed that it may not be easy to see how this limitation can proceed from any other consideration than a policy of suppression. Nevertheless it still seems to me to have enough relation to reality to save even this feature of the plan. We are to suppose that physicians are intrusted with the final distribution of opium as the class of sellers most likely to secure a distribution to consumers only. But the only two classes of consumers are the sick and those who are addicted to it as the gratification of a morbid craving. Hence the effect of the limitation upon physicians' right to distribute is to cut off the second class of consumers. Has that prohibition any genuine relation to a statute aimed to require a license tax from all those who sell opium? On the whole, I think it cannot be said not to have such a relation. Addicts to the use of opium are as a rule persons of greatly impaired will and of little sense of social obligation, and they usually demand relatively large quantities at frequent intervals. If they are given access to unlimited quantities, there is a genuine possibility that they might find it profitable to sell so much as their immediate needs did not require. As a class they would be most unlikely to observe any law which imposed upon them an excise as a condition of resale. Therefore, to shut them off from all right to the drug, even assuming that Congress must regard indifferently their demand and that of the sick, does not seem to me inevitably an irrelevant administrative measure. It is quite true that incidentally it shuts off the actual consumption of opium by addicts; but I do not understand that it is a good cause of complaint against an excise that in its incidents it may suppress some consumption. All that is necessary is that the limitation be appropriate to suppress sales which, if they did occur, would evade the law. If that be true, the incidental other results do not invalidate it.

It must be confessed that the authorities are somewhat doubtful. The Circuit Court of Appeals for the Sixth Circuit, in Webb v. U. S., certified the question here presented to the Supreme Court on February 11, 1918. In U. S. v. Doremus, 246 Fed. 958, the statute was held unconstitutional in the District Court, and the Supreme Court had enough doubts of the validity of section 8 in U. S. v. Jin Fuey Moy, 241 U. S. 394, 36 Sup. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854, to feel obliged to impose upon it what the court itself recognized as a forced construction. On the other hand, section 2 was enforced in U. S. v. Curtis (D. C.) 229 Fed. 288, though without consideration of its constitutionality. It is apparent that the question is still in doubt, but, for the reasons I have just given, I overrule the objection to the constitutionality of the section.

[2] There remains only the question of the formal sufficiency of the indictment. That a physician "dispenses" the drug when he writes only a prescription I need not hold, for here the allegation says nothing of how he sold or dispensed it. Therefore the point raised

in U. S. v. Reynolds (D. C.) 244 Fed. 991, does not arise. If there be, such a difficulty, it will be raised at the trial. Certainly a physician may sell the drug. The phrase, "not in the course of his professional practice only," is indeed a conclusion of the pleader, but not bad for that reason, if it states only the "ultimate facts." That is what it should do. Nor is it an objection that the pleader followed the language of the statute; that depends upon how the statute reads. If it define the crime in colloquial language, precisely and without recourse to terms which in their turn involve conclusions of law, it is enough to use the words of the statute. In the case at bar a good many different situations would be evidence of the fact that the sale was not in the course of the defendant's practice; but they would be evidence from which the "ultimate fact" could be inferred, and they ought not to be pleaded. Perhaps a better form would have been that the defendant sold the drug "without any regard to the cure or alleviation of any malady from which the said Stutzenberg then and there was suffering"; but I question that this was necessary. A physician's practice is an effort to cure or alleviate his patient's ills, and it seems to me that to say that the sale was not in the course of his practice is substantially an equivalent of saying that he did not mean to cure by his treatment. In any case, the allegation has no implicit legal term, and, if it be too indefinite, the remedy is by bill of particulars. I cannot accept U. S. v. Friedman (D. C.) 224 Fed. 276, on the merits. It is quite clear that, however difficult the case may be to prove, the statute meant to reach the cases of those physicians who, abusing the privilege which their license gives them, use their position only to gratify the appetites of the unfortunate victims of the drug.

The demurrer is overruled.