The People of the State of New York, Respondent, *v.* Joseph Gennaro, Appellant.

First Department, March 21, 1941.

*Abraham J. Gellinoff* of counsel [*Pilatsky & Gellinoff*, attorneys], for the appellant.

*Stanley H. Fuld, Assistant District Attorney,* of counsel [*Harris B. Steinberg, Deputy Assistant District Attorney,* with him on the brief; *Thomas E. Dewey, District Attorney*], for the respondent.

Townley, J. In this case the defendant pleaded guilty to the crime of attempting feloniously to sell a narcotic drug. An information charging the defendant with being a second felony offender based upon a prior conviction in the Federal court for selling drugs was thereupon filed against him. The defendant admitted having

been convicted in the District Court of the United States for the Southern District of New York. But he denied, *first*, that the offense was the crime of selling narcotics, and, *second*, that it would have constituted a felony if committed in this State.

Section 1941 of the Penal Law, on which the information charging the defendant with being a second felony offender is grounded, reads as follows:

" Punishment for second or third offense of felony.

" A person, who, after having been once or twice convicted * * * under the laws of any other State, government, or country, of a crime which, if committed within this State, would be a felony, commits any felony, within this State, is punishable upon conviction of such second or third offense, as follows: * * * * "

The question for decision before us is whether the Federal conviction is of a crime which would be a felony within this State. Appellant claims that the offense of which he was found guilty in the Federal court was merely an offense against the Revenue Laws of the United States and hence not one which if " committed within this State, would be a felony." To determine this question it is necessary to consider fully the Federal indictment and the law on which it is based.

The Federal indictment in the first and fourth counts charged two separate sales of heroin to the same person, the first in May, 1937, and the second in June, 1937. These sales were made " contrary to law, in that said heroin was not in the original stamped package or from the original stamped package " in violation of section 1043 of title 26 of the United States Code. Counts 2 and 5 charge the defendant with making sales of the same heroin contrary to law " in that said sale was not in pursuance of a written order * * * to the said defendant on a form issued in blank for that purpose " in violation of section 1044 of title 26 of the United States Code. Counts 3 and 6 of the indictment charge that the defendant " unlawfully, wilfully, knowingly and fraudulently did conceal, sell and facilitate the transportation, concealment and sale " of said heroin " after said heroin had been imported and brought into the United States contrary to law * * * as he [the defendant] then and there well knew " in violation of sections 173 and 174 of title 21 of the United States Code. The defendant pleaded guilty to that indictment and was sentenced to imprisonment for one year and one day upon *each* of the six counts.

The judge in the Court of General Sessions held that the Federal conviction constituted a prior felony conviction within the meaning of section 1941 of the Penal Law. In this he was following the general practice of that court, which has been to hold that a convic-

tion of selling narcotics under the Federal laws is a prior felony conviction within the meaning of section 1941 of the Penal Law. (*People* v. *Henry Williams*, [Gen. Sess. N. Y. Co.] Nov. 10, 1939; *People* v. *Stanley Gumbs*, [Gen. Sess. N. Y. Co.] May 15, 1939; *People* v. *Charles Sullivan*, [Gen. Sess. N. Y. Co.] April 21, 1939; *People* v. *Louis Cortez*, [Gen. Sess. N. Y. Co.] Jan. 11, 1940; *People* v. *Henry Smith*, [Gen. Sess. N. Y. Co.] Feb. 23, 1940; *People* v. *Eva Garland*, [Gen. Sess. N. Y. Co.] April 22, 1940.) The only case to the contrary is *People* v. *Rios* (175 Misc. 794). The question is of general importance, recurs frequently, and requires full consideration of all the elements involved.

The first point to consider is the scope and meaning of the Federal statute. At first, the Federal courts in sustaining the constitutionality of the Harrison Act put their decisions upon the ground that the offense was one against the Revenue Laws of the United States. (*Blockburger* v. *United States*, 284 U. S. 299; *United States* v. *Jin Fuey Moy*, 241 id. 394.) The theory then was that if the legislation could not be justified as in furtherance of some Federal purpose, its constitutionality could not be upheld. It was stated that a general prohibition against the sale of narcotics would obviously be outside the powers of Congress and unconstitutional. It has generally been recognized, however, that the act had the further purpose of preventing or restricting the sale of narcotics. In *United States* v. *Jin Fuey Moy* (*supra*) the Supreme Court of the United States discussed the purpose of the Harrison Act. Mr. Justice HOLMES pointed out that the government contended " that this act was passed with two others in order to carry out the International Opium Convention (38 Stat., Part 2, 1929); that Congress gave it the appearance of a taxing measure in order to give it a coating of constitutionality, but that it really was a police measure that strained all the powers of the Legislature." Though in that case the court decided the matter on grounds other than the requirements of the opium convention, the fact remains that the court did say " it may be assumed that the statute has a moral end as well as revenue in view * * *." As time passed it was admitted in *United States* v. *Rosenberg* (251 Fed. 963) that the chief purpose of the Federal narcotics laws was " to control the distribution " of drugs, saying: " Now, it is of course quite true * * * and indeed it has been long recognized * * * that in the exercise of its taxing powers Congress may in fact be actuated, in part, anyway, by purposes quite different from the raising of revenue, and the courts will nevertheless not question the result; and so it does not matter that the chief purpose of this section [of the Harrison Act] is pretty obviously not to raise revenue, but to control the distribution of opium."

Later, in *Menna* v. *Menna* (102 F. [2d] 617), the court noted that the States have adopted laws paralleling the Federal statute, and the court said:

" It is quite true the Supreme Court in the *Doremus* case [ *United States* v. *Doremus*, 249 U. S. 86, 39 S. Ct. 214, 63 L. Ed. 493] upheld the constitutionality of the [Harrison] Act under the taxing power of the United States. But it is also true the Court rejected the argument that the Act should be declared unconstitutional because its effect was to accomplish another purpose. And in the *Jin Fuey Moy* case [ *United States* v. *Jin Fuey Moy*, 241 U. S. 394, 36 S. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854] the other purpose was assumed to be the moral end to be accomplished in carrying out the objects of the International Opium Convention — the abatement of the drug habit.

" When the necessity of legislation to control the narcotic evil was recognized some thirty years ago, the United States joined six other nations in consultation with a view to its suppression. The movement has grown until today it embraces the sixty-four nations of the world, as the result of which there is now said to be — though perhaps too optimistically — world-wide control of the manufacture and shipment of narcotics. State consciousness of the extent of the evil has developed in line with this world movement, and forty of the forty-eight States now have adopted laws paralleling the Federal statute. In consequence of all of this, it has become a matter of general knowledge that the habitual use of opium produces crime, violence, brutality and insanity."

We may now take it as settled that the Harrison Act is an act regulating the sale of drugs under the guise of a revenue statute.

Article 22 of the Public Health Law of the State of New York enacted in 1933 is an adoption of the Uniform Narcotic Drug Act, previously formulated and recommended by the National Conference of Commissioners on Uniform State Laws in October, 1932. There is no doubt that the purpose of the Uniform Act was to parallel and supplement the Federal narcotic laws. The New York statute provides for co-operative action by State and Federal authorities (Public Health Law, § 443), for the interchange of data between them (Id. § 437) and both statutes exempt the same medicinal preparations from their prohibition (Id. § 428; U. S. Code, tit. 26, § 1041). Section 425, subdivision 3, and section 429 of the Public Health Law provide that the use of Federal forms and the keeping of records as required by Federal law shall be deemed a compliance with the provisions of the Public Health Law. The appellant argues that the acts constituting the crime of which the defendant was convicted in the Federal court do not

constitute a crime under our State laws. It is clear enough that both the Federal and the State offenses have in common the act of a sale of narcotics. The State law prohibits the sale outright unless the defendant can prove that it was done in accordance with certain specified exceptions. The Federal law while not forbidding the sale outright punishes the sale if it is made without compliance with certain regulations. The Federal and State exceptions overlap and complement each other. The effect of the two laws is to punish the same conduct and this difference in verbal approach is the only distinction that can be made between the two laws. In effect, they are the same.

The identity of these laws is recognized by section 445 of the Public Health Law which is of the utmost importance in considering this question. It reads as follows:

" Effect of acquittal or conviction under Federal narcotic laws. No person shall be prosecuted for a violation of any provision of this article if such person has been acquitted or convicted under the Federal narcotic laws of the same act or omission which, it is alleged, constitutes a violation of this article."

This section clearly indicates an intention on the part of the Legislature to put convictions under the Federal and State statutes on an equal footing. The rule that convictions under one statute shall be a bar to prosecution under the other necessarily presupposes an identity of offense. In the determination of questions arising under section 1941 of the Penal Law effect must be given to this purpose and offenses under the Federal law should be recognized as equivalent to those under the State statute.

The object of section 1941 of the Penal Law is to free the public from exposure to peddlers who have by the number of convictions here or elsewhere for the act of selling drugs shown that they are incorrigible. As Judge, now Chief Judge LEHMAN, said in *People v. Gutterson* (244 N. Y. 243, 249): " The Legislature has determined that the previous history of a person convicted of crime is a factor which may determine the nature of the punishment which should be meted out to him. Persistence in a career of crime may evidence vicious character. Reform may be less probable after second conviction; protection to society may require unbending severity and untempered justice."

We conclude, therefore, that the Public Health Law shows an intention to treat the Harrison Act as an act paralleling itself and in contemplation of New York law as being an act which prohibits the selling of narcotics except under special circumstances just as the New York Public Health Law itself forbids it.

Considerable stress is laid by the appellant on the decision of the Court of Appeals in *People* v. *Gutterson (supra)*. In that case the defendant was convicted of the crime of larceny by false pretenses. He had previously been convicted in the United States District Court of using the mails in a scheme to defraud and had received a sentence of thirty days. The question before the court was whether the defendant was entitled to an indeterminate sentence under section 2189 of the Penal Law, which provides for such sentence for " A person never before convicted of a crime punishable by imprisonment in a State prison, or who, though previously convicted of such crime, is not punishable under the provisions of section nineteen hundred forty-one or nineteen hundred forty-two * * *."

The Court of Appeals said (p. 250): " It rests with the Legislature to fix a standard for the crimes to which upon proof of prior conviction section 2189 of the Penal Law has attached new consequences. The Legislature has fixed a standard which can reasonably include only crimes which are punishable under the law of this State. Doubtless other reasonable standards might be used which would include the crime of using the mails to defraud."

The prisoner was, therefore, given an indeterminate sentence because, as the court said, " the crime itself is not *punishable* under the laws of the State of New York."

The crime of using the mails in a scheme to defraud is defined in part as follows (U. S. Code, tit. 18, § 338 [U. S. Crim. Code, § 215]): " Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, *or promises* * * * shall * * * place * * * any letter, postal card, package, writing, circular, pamphlet, or advertisement * * * in any postoffice * * * shall be fined * * *." As will be seen the statute is extremely broad permitting not only prosecution for a scheme which employs false pretenses and representations but also promises. As was said in *Durland* v. *United States* (161 U. S. 306): " It was with the purpose of protecting the public against all such intentional efforts to despoil, and to prevent the post office from being used to carry them into effect, that this statute was passed * * *." In *Farley* v. *Heininger* (105 F. [2d] 79) it was said: " The decisive factor, therefore, is not whether ' any one complains of fraud, or was in fact defrauded,' but whether the mails are being used to project a scheme which may result in obtaining money from members of the public by means of false and fraudulent statements." In short, the Federal statute does not require proof of facts which would constitute a larceny. The conception of a plan to defraud

and the sending of a letter to advance that plan are sufficient. (*Wilson* v. *United States*, 190 Fed. 427.)

It is thus clear that the Court of Appeals could have reached no result other than it did on the facts of the *Gutterson* case. We have no equivalent of the crime of using the mails to defraud. The court clearly indicated that the Legislature did not intend to treat as a prior felony offense a conviction in another State for a crime, as it said, " which we may regard as innocent " (*supra,* p. 250).

The present case is, of course, far different on its facts. At least in part the crime of which the defendant was convicted in the Federal court consists of acts which this State treats as criminal. As was said above, the second and fifth counts of the Federal indictment charged the selling of opium contrary to law in that said sale was not in pursuance of a written order to the said defendant on a form issued in blank for that purpose in violation of section 1044 of title 26 of the United States Code. Section 422 and paragraph (a) of subdivision 2 of section 425 of the Public Health Law, together with section 1751 of the Penal Law, prohibit sales otherwise legal which are not in pursuance of written orders. Subdivision 16 of section 421 of the Public Health Law defines an official written order as one written " on a form provided for that purpose by the United States Commissioner of Narcotics, under any laws of the United States making provision therefor, if such order forms are authorized and required by Federal law, and if no such order form is provided, then on an official form provided for that purpose by the department of health." It is thus established beyond doubt that the Federal conviction must be taken into consideration in enforcing section 1941 of the Penal Law and we find nothing in the *Gutterson* case (*supra*) to the contrary.

The judgment of conviction, so far as appealed from, should be affirmed.

MARTIN, P. J., DORE and CALLAHAN, JJ., concur; COHN, J., dissents.

COHN, J. (dissenting). Upon the facts defendant is not a second offender and the trial court was without authority to sentence him as such. Section 1941 of the Penal Law provides that a person who, after having been once convicted under the laws of any government of a crime which, if committed within this State, would be a felony, commits any felony within this State, is punishable as a second offender. In this case the crime with which defendant was charged in the Federal indictment and the crime of which he was convicted in the United States District Court

for the Southern District of New York, did not and does not now constitute a felony if committed within this State; hence it could furnish no basis for the defendant's conviction as a second offender.

The Federal indictment contained six counts. The first alleged that on May 27, 1937, defendant unlawfully sold heroin which was not in or from an original stamped package containing internal revenue stamps as required by an act of Congress (U. S. Code, tit. 26, § 1043). The second count alleged that the sale of the drug was not in pursuance of a written order of the purchaser on a form issued in blank for that purpose by the Commissioner of Internal Revenue of the United States as provided by act of Congress (U. S. Code, tit. 26, § 1044). The third count charged that the defendant sold heroin which he knew had been imported illegally into the United States in violation of an act of Congress (U. S. Code, tit. 21, §§ 173, 174). The remaining counts of the ndictment, namely, the fourth fifth and sixth counts, were identical with the three enumerated except that they were based upon a transaction had with the same purchaser on a different date, to wit, June 10, 1937.

Concededly the crime of which defendant was previously convicted in the United States District Court is a felony under the Federal law. However, it does not follow that the acts constitute a crime under our State law. Thus, the crime of using the mails to defraud, although a felony under the Federal law, is an offense cognizable only by the laws of the United States and not one which is a crime under the laws of this State. (*People* v. *Gutterson*, 244 N. Y. 243, 250.) To the same effect are *People* v. *Knox* (223 App. Div. 123) and *People* v. *Voelker* (220 id. 528; 222 id. 717).

On August 11, 1937, the date of the defendant's conviction in the Federal court, it was no crime under the laws of this State to sell heroin which was not in or from the original stamped package containing the internal revenue stamps required by Federal law (Federal counts 1 and 4); nor was it a crime under the New York statutes to sell the drug in the absence of a written order from the purchaser to defendant on a form issued in blank for that purpose by the Commissioner of Internal Revenue (Federal counts 2 and 5), or to sell heroin with knowledge that it had been illegally imported into this country (Counts 3 and 6 of the Federal indictment). (Cf. Penal Law, § 1751, as it read in Aug. 1937 [See Laws of 1929, chap. 377, § 2]; Public Health Law, art. 22.)

Section 422 of the Public Health Law authorizes the sale of narcotic drugs in New York State by a duly licensed manufacturer, wholesaler or apothecary upon compliance with certain prescribed regulations. Such was the law, too, at the time of defendant's

Federal conviction. Before such a sale may be deemed unlawful in this State the circumstances of the sale must disclose that the seller was not a duly licensed manufacturer, wholesaler or apothecary or that in making the sale the seller did not comply with the provisions governing such sale as set forth in article 22 of the Public Health Law.

The Federal statutes do not specifically prohibit the sale of narcotic drugs as such, for that is a matter entirely beyond the authority of Congress and within the exclusive control of the States. They may and do prohibit, not the sale of narcotic drugs as sales, but only the sale of the drugs in violation of Federal tax laws or in violation of United States custom laws. This distinction is clearly enunciated by the United States Supreme Court in the case of *Blockburger* v. *United States* (284 U. S. 299), where SUTHERLAND, J., writing for the court, says:

" The [Harrison] Narcotic Act does not create the offense of engaging in the business of selling the forbidden drugs, but penalizes any sale made in the absence of either of the qualifying requirements set forth. * * *

" Section 1 of the Narcotic Act creates the offense of selling any of the forbidden drugs except in or from the original stamped package; and § 2 creates the offense of selling any of such drugs not in pursuance of a written order of the person to whom the drug is sold. * * *

" The statute is not aimed at sales of the forbidden drugs *qua* sales, a matter entirely beyond the authority of Congress, but at sales of such drugs in violation of the requirements set forth in §§ 1 and 2, enacted as aids to the enforcement of the stamp tax imposed by the act." (Cases cited.)

The Harrison Act, so called, is a taxing measure, for otherwise it would be no law at all. (*Alston* v. *United States*, 274 U. S. 289, 294; *Nigro* v. *United States*, 276 id. 332, 341, 345, 352.)

In construing the crime charged in the Federal indictment, the burden was on the People to show that the acts therein alleged contained all the elements necessary to constitute a crime as described in article 22 of the Public Health Law, including the negative of the exceptions therein set forth. The terms of those exceptions are part of the description of the crime itself. The People were under a duty to establish that the accused is not within such exceptions or provisos. (*People* v. *Devinny*, 227 N. Y. 397, 401; *People* v. *Stedeker*, 175 id. 57; *Rowell* v. *Janvrin*, 151 id. 60.)

Section 440 of article 22 of the Public Health Law of this State casts upon the defendant the burden of proof of any exception

or proviso in any action or proceeding brought for the enforcement of article 22 of the Public Health Law. However, it has no application to this proceeding which was the trial of an information charging defendant with being a second offender. By his plea to the Federal indictment in the United States court the defendant admitted only the allegations therein set forth. Upon those allegations it does not appear that the defendant committed any offense under the laws of this State. In a proceeding to determine whether or not a defendant is a second offender (Penal Law, § 1943) the court is confined to the facts charged in the indictment upon which the previous conviction was had. (*People* v. *Voelker*, 222 App. Div. 717; *People* v. *Krumme*, 161 Misc. 278.) To hold that section 440 of article 22 of the New York State Public Health Law is applicable in construing the crimes alleged in the Federal indictment would cast upon this defendant the burden of proving that the sale of the drug which he had made over three years before and for which he had already been convicted and punished under the Federal law, was an authorized one under the sections specified in the New York law. The burden rests on the People to prove beyond a reasonable doubt that the crime of which the defendant had been convicted in the Federal court would be a felony if committed within this State. (*People* v. *Reese*, 258 N. Y. 89, 101.) That burden they did not sustain in this case.

Though the offense of which this defendant was convicted in the Federal court is a heinous one, he was substantially punished for that crime. No matter how much we may condemn the nature of the offense committed by defendant, he may only be penalized in the manner provided by law. In the face of the language of section 1941 of the Penal Law, it may not be adjudged that the defendant is a second offender based upon his conviction in the Federal court in the absence of a showing that such offense was a felony under our State laws at the time it was committed.

The information under section 1941 and section 1943 of the Penal Law should accordingly be dismissed, the judgment should be modified by reducing the sentence to imprisonment for not less than two years and six months and not more than five years, and as so modified, it should be affirmed.

Judgment, so far as appealed from, affirmed.